**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 190696-U

Order filed March 20, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| *In re* L.M. and K.M., | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| Minors, | ) | Peoria County, Illinois, |
| | ) | |
| (The People of the State of Illinois, | ) | Appeal Nos.   3-19-0696 |
| | ) | 3-19-0697 |
| Petitioner-Appellee, | ) | |
| | ) | Circuit Nos.   17-JA-215 |
| v. | ) | 17-JA-216 |
| | ) | |
| ANTHONY M., | ) | Honorable |
| | ) | David A. Brown, |
| Respondent-Appellant). | ) | Judge, Presiding. |

_____

JUSTICE WRIGHT delivered the judgment of the court.
Justices McDade and Schmidt concurred in the judgment.

_____

**ORDER**

¶ 1        *Held*: The trial court's finding that father was unfit based on depravity was not against the manifest weight of the evidence.

¶ 2        After the trial court adjudicated L.M. (D.O.B. 9/27/2015) and K.M. (D.O.B. 3/14/2013) (collectively minors) neglected and found Anthony McKinney (father) dispositionally unfit, the State moved to terminate father's parental rights. During the termination proceedings, the trial

court found father unfit under the statutory ground of depravity. The trial court later terminated father's parental rights. On appeal, father challenges the trial court's finding that father was proven unfit by clear and convincing evidence.

¶ 3                                    I. BACKGROUND

¶ 4        On August 17, 2017, the State filed neglect petitions alleging that the minors were neglected pursuant to section 2-3 of the Juvenile Court Act of 1987 in that their environment was injurious to their welfare. 705 ILCS 405/2-3 (West 2016). Specifically, the neglect petitions alleged that father had an extensive criminal history, ongoing substance abuse issues, and was not cooperating with substance abuse treatment or Lutheran Social Services. On March 5, 2018, the trial court entered an order adjudicating the minors neglected. On April 9, 2018, the trial court entered a dispositional order finding father unfit pursuant to the allegations in the petition and made the minors wards of the court.

¶ 5        On April 22, 2019, the State filed petitions to terminate father's parental rights, alleging father was an unfit parent pursuant to section 1(D)(i) of the Adoption Act on grounds that father was a depraved parent. 750 ILCS 50/1(D)(i) (West 2018). The State's termination petitions alleged father had been convicted of the following: burglary (Peoria County case No. 17-CF-229), retail theft (Tazewell County case No. 17-CF-414), retail theft (Tazewell County case No. 17-CF-339), retail theft (Tazewell County case No. 17-CF-627), theft (Peoria County case No. 10-CF-658), obstructing/resisting arrest (Tazewell County case No. 10-CM-598), and battery (Tazewell County case No. 10-CM-599).[1]

_____

[1]The State's petitions to terminate father's parental rights originally read that Tazewell County case Nos. 17-CF-414, 17-CF-339, and 17-CF-627 were thefts, not retail thefts. During the hearing on the State's petition to terminate, the State amended its termination petitions to show that these convictions were for retail theft, not theft.

¶ 6	On August 26, 2019, the trial court conducted a hearing on the State's petitions to terminate. At the outset, the State introduced seven certified copies of father's criminal convictions as listed above without objection.

¶ 7	Father testified that he was currently incarcerated in the Sheridan Correctional Center (Sheridan facility) and had been there for the last eight months. Prior to his incarceration in the Sheridan facility, father was incarcerated in the Peoria County Jail for four to five months. Father testified that prior to his incarceration he worked as a certified carpenter in Kentucky and had completed an apprenticeship. Father estimated that he made over $60,000 per year in Kentucky and was able to support the minors, including providing them with clothing, food, and shelter.

¶ 8	Father briefly explained the facts underlying his burglary and retail theft convictions. Father regretted committing the crimes. Father explained that he was not the type of person to commit crimes, but drug addiction changed his life. Father previously used heroin, fentanyl, and occasionally cocaine or crack. Father testified that he did not commit any crimes or use any drugs in the presence of the minors. Father has attempted to and would like to contact the minors but has so far been unsuccessful in his attempts. Father had not spoken with the minors for over a year and stated that he was late to his last visit with the minors, which was wrong and broke his heart.

¶ 9	For the past eight to nine months, father has received treatment at the Sheridan facility. Through treatment, father learned his triggers and the tools to combat his triggers. Father learned that he does not need to get high to get away from his problems. Father is very happy with his sobriety and feels free. Father has had no disciplinary issues in prison. While incarcerated, father completed a parenting course called "Inside Out Dads" and took a course called "Young Men's Aggression." Father attends Narcotics Anonymous when it is offered. Father attends counseling every weekday. Counseling has helped father pinpoint his problems and express himself.

¶ 10    Father testified that he could be released from prison as early as December 2019, but no later than June 2020. Upon release, father plans to work to be the man and the father he knows he can be. Father plans to work as a carpenter to support the minors financially. Father has taken college courses at the Sheridan facility and has almost completed an electrician apprenticeship. Father expects to get his electrician certification in October or November 2019. Father plans to continue treatment upon release, look into obtaining a sponsor, and is willing to participate in drug drops.

¶ 11    On cross-examination, father clarified that he had been convicted of burglary and did not plead guilty as he testified on direct examination. Father had been incarcerated for a little over a year and had been using drugs until he went to county jail in July 2018. Beforehand, father had been an addict for four years. Father has yet to test his sobriety outside of custody. Regarding counseling, father testified that he participates primarily in group counseling and attends individual counseling once per week.

¶ 12    Katrina Vroman of Lutheran Social Services testified that she has been father's social worker since October 2018, but first met father in April 2019. Father has been cooperative with Vroman since that time. Vroman received paperwork from father indicating that he had completed a parenting class and was enrolled in counseling. Vroman was unaware of any negative reports about father in prison and stated that father was doing all that he could.

¶ 13    After hearing the testimony, reviewing the exhibits, and considering the parties' arguments, the trial court found that father's testimony concerning his rehabilitation was sufficient to overcome the presumption of depravity. However, the trial court noted that father committed many of the criminal offenses both while on probation and after the minors were born. The court found that father demonstrated an inability to conform to accepted morality and to abide by the laws of

4

the state while out of incarceration. Therefore, the trial court found that the State had proven father unfit based on depravity by clear and convincing evidence. Father appeals.

¶ 14                                                II. ANALYSIS

¶ 15         On appeal, father urges this court to reverse the trial court's finding that the State proved by clear and convincing evidence that father is unfit on depravity grounds pursuant to section 1(D)(i). 750 ILCS 50/1(D)(i) (West 2018). Clear and convincing evidence is stated to be greater than a preponderance but something less than proof beyond a reasonable doubt. *In re D.T.*, 212 Ill. 2d 347, 362 (2004). The trial court's determination that clear and convincing evidence of a parent's unfitness has been shown for purposes of the termination of parental rights will not be overturned unless the finding is contrary to the manifest weight of the evidence. *In re D.D.*, 196 Ill. 2d 405, 417 (2001); *In re D.M.*, 298 Ill. App. 3d 574, 579 (1998). A finding is against the manifest weight where, based on the evidence, the opposite result is clearly evident. *In re D.D.*, 196 Ill. 2d at 417.

¶ 16         This court has defined depravity as an "inherent deficiency of moral sense and rectitude." *In the Interest of A.L.*, 301 Ill. App. 3d 198, 202 (1998). Section 1(D)(i), entitled "Depravity[,]" provides that there is a rebuttable presumption that a parent is depraved if the parent has been criminally convicted of at least three felonies and at least one of the convictions took place within five years of the filing of the petition or motion seeking termination of parental rights. 750 ILCS 50/1(D)(i) (West 2018). A parent may rebut this presumption by showing that, despite their convictions, he or she is not depraved. *In re A.M.*, 358 Ill. App. 3d 247 (2005). If the presumption is adequately rebutted, the burden in the case does not shift. The case merely proceeds as if the presumption never existed and is determined on the basis of the evidence presented. *In re J.V.*, 2018 IL App (1st) 171766, ¶ 180; *In re J.A.*, 316 Ill. App. 3d 553, 562-63 (2000). Ultimately, "[t]he statutory ground of depravity requires the trier of fact to closely scrutinize the character and

credibility of the parent." *In re J.A.*, 316 Ill. App. 3d at 563. The reviewing court will give the trial court's determinations on such matters deferential treatment. *Id.*

¶ 17 Here, the State submitted into evidence seven certified copies of father's criminal convictions. Father's uncontroverted convictions included four felonies in the last five years and five felonies overall, well over the threshold amount required under section 1(D)(i). Father's criminal history spanned from 2010 to 2017. Thus, father exhibited recurring criminal behavior for a significant duration. As the trial court noted, father committed several felony offenses while on probation, highlighting father's inability to conform with society's laws even while under supervision. Most importantly, father committed felonies during a substantial portion of both the minors' lives.

¶ 18 Despite father's commendable efforts while incarcerated, the record clearly establishes that father's new-found sobriety and outlook have yet to be tested outside of the bounds of confinement where father has been shown to have a propensity for abusing drugs and breaking the law. Based on this record, we affirm the trial court's finding of parental unfitness for purposes of the termination petitions where the State established depravity by clear and convincing evidence.

¶ 19                                    III. CONCLUSION

¶ 20 The judgment of the circuit court of Peoria County is affirmed.

¶ 21 Affirmed.